CHARLES B. STOUGH, Respondent, v. STEELVILLE ELECTRIC LIGHT AND POWER COMPANY, Appellant.

Springfield Court of Appeals, December 16, 1920.

1. **WATERS AND WATERCOURSES: Owner Cannot Discharge Water Diverted From Stream Into Old Bed Seventeen Years After Stream Had Taken New Channel.** Owner which had for many years diverted water on its land from stream could not discharge water on land of adjoining owner into old bed of creek after new channel had been cut and had remained the natural and main channel for seventeen years, since landowner's right to change course of stream on his land is conditioned on restoring water to natural channel before it reaches adjoining owner's land.

2. ————: **Owner Can Change Course of Natural Stream Within Limits of Own Land.** A landowner is entitled to change the course of a natural stream within the limits of his own land where he does not, by. so doing, cast on the land of an adjoining proprietor water which would not naturally flow there, but restores the same to its natural channel before it reaches the land of the adjoining proprietor.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Frank H. Farris* and *A. H. Harrison* for appellant.

(1) Injunctions lie only for a threatened wrong, for which no adequate legal remedy is afforded, and a court of equity will not issue an injunction to prevent the performance of an act already consummated. Carlin v. Wolff, et al., 154 Mo. 539; Owen v. Ford, 49 Mo. 436; Davis v. Hartwig, 195 Mo. 380; Verdin v. St. Loius 131 Mo. 26; Railroad v. Mining Co., 138 Mo. App. 133.) (2) The evidence showing that the plaintiff stood by

and permitted the construction of the electric light plant power house, reconstruction of dam and race without taking any steps to prevent it, an injunction will not be granted to restrain the operation of the plant and discharge of the water. The Planet Property & Financial Co. v. St. L. O. H. & C. Ry. Co., 115 Mo. 613; Provolt v. Railroad, 57 Mo. 256; Kanaga v. Railroad, 76 Mo. 207; Versteeg v. Railroad, 250 Mo. 61, l. c. 77; McCann v. Wallace, 117 F. 936; Logansport v. Uhl, 99 Ind.531, 49 Am. Rep. 109; Clark v. Cambridge Irrigation Co., 45 Neb. 798, 64 N. W. 239. (3) Where the alleged nuisance consists in the exercise of a manufacture, the court opon the same principle upon whicn it feels so reluctant to restrain the working of mines and collieries, would require the fact of its being a nuisance, to be first clearly established at law before granting an injunction. The plaintiff has ample remedies without the extraordinary one by injunction. He may sue for damages. Welton et al. v. Martin, 7 Mo. 307; Arnold v. Klepper, 24 Mo. 273; Scheurich v. Light Co., 109 Mo. App. 421, 422. (4) A mere non-user by a riparian proprietor of his full water right privileges for twenty years does not deprive him of the right to use them; there must have been a use by another adverse to this right, for the whole of such a period, to destroy the right. Townsend v. McDonald, 12 N. Y. (2 Kem.) 381, 64 Am. Dec. 508. (5) Mere non-user of a mill privilege for more than twenty years if unaccompanied by any decided or unequivocal acts of the owner inconsistent with the continued existence of tne easment will not extinguish it. 3 Farnham on Waters, page 2179, sec. 715; Eddy v. Chace, 140 Mass. 471; 28 Amer. & Eng. Ency. of Law, 1017; 40 Cyc. 697; 30 Am & Eng. Ency. of Law (2 Ed.), 368-377; Haigth v. Morris Aqueduct, 4 Wash. U. S. 601; Pillsbury v. Moore, 44 Me. 154, 69 Am. Dec. 91. (6) It is well settled that an estate or easement is not lost by mere non-user. White v. Crawford, 10 Mass. 183; Arnold v. Stevens, 24 Pick. 106; Owen v. Field, 102 Mass. 90, 114; Barnes v. Lloyd, 112 Mass. 224; But-

terfield v. Reed, 160 Mass. 361; Hatton v. Railroad, 253 Mo. 660.

*Harry Clymer* and *E. E. Roberts* for respondent.

(1) Where a new channel is formed by a freshet and such new channel has existed for several years, it becomes a watercourse, and such channel could not be obstructed so as to divert the flow of the water, or changed back to its original channel. Smith v. Musgrove, 32 Mo. App. 241; McGhay v. Woolston et al., 175 Mo. App. 327. Even a drainage ditch constructed and used for the purpose of carrying off surface water cannot be changed so as to divert the flow of such water and discharge it on the land of another. Weishar v. Sherridan, 168 Mo. App. 181. (2) That injunction is the proper remedy in cases like the one at bar, where it is sought to restrain a defendant from diverting water and discharging it on another's land, is expressly held by the St. Louis and Kansas City Courts of Appeals. Smith v. Musgrove, 32 Mo. App. 241; Wood v. Craig, 133 Mo. App. 548; Weishar v. Sherridan, 168 Mo. App. 181; Desberger v. Realty Co., 126 Mo. App. 206.

FARRINGTON, J.—This is an appeal brought by defendant from a judgment rendered in the circuit court of Crawford county wherein the plaintiff was awarded $675 for damages occasioned by plaintiff flooding his land with the water from a spring which had been dammed up, the water being brought through a race and through defendant's mill and discharged so that it found its way back to the natural channel of a creek into which the spring water would flow had it not been diverted by the act of the defendant. The cause was originally appealed to this court. We were of the opinion that the right to flow the water over the plaintiff's land by the defendant was that in the nature of an easement and that the title to real estate was involved in the action. We, therefore, transferred it to the Supreme Court. That court is an opinion ren-

dered in the cause held that the title to real estate was not involved and transferred the case back to this court. The opinion will be found in 217 S. W. 515, which contains a complete statement of the claims of the two parties together with a copy of the judgment rendered by the circuit court. We, therefore, refer to the facts which are stated in that opinion for a determination of the question here.

The principal question to be determined on this appeal is, whether a defendant, who has acquired the right to divert water from a watercourse on his land and after using the same, returns it to the natural channel of the stream of which it forms a part, can continue to discharge the water at the same place when by so doing he damages the plaintiff, a lower riparian owner, by reason of the fact that in a freshet occurring some seventeen years before this suit was brought the natural channel of the creek into which the defendant had formerly discharged such water changed, and by such change the water which was discharged by the defendant found its way back into the natural channel over the plaintiff's land and in a course it had not so run prior to the changing of the natural channel of the creek.

The defendant dammed up a spring to make a reservoir of water to run its power plant. Had it not formed this reservoir the water would have run down to a creek and followed the natural channel of such creek; but in order to run the power plant a race was built and the water carried quite a distance and then discharged by the plant so that it ran back into the natural channel of the creek. This process had been followed by defendant's predecessors in ownership of the property for a period of over ten, fifteen and probably twenty years. Then in 1898 there was a severe rain, which caused the creek to change its course to the east so that the natural channel of the creek no longer ran by defendant's power plant where it had been discharging the water on plaintiff's land and re-

turning it into the channel of the creek, but emptying it into what became the old channel of the creek. No operation was carried on continuously, but from time to time and within ten years work was done in discharging this water so that if defendant ever had any right by prescription to discharge the water on plaintiff's land so as to go back into the creek as it originally ran, such right was not defeated by the Statute of Limitations. It is on this ground that defendant claims the right to discharge the water just as it had done when the natural channel of the creek ran as it formerly did. We are of the opinion however, that under the law, regardless of how long or how continuously it had used this water in operating its mill, or its predecessors in operating their plants, when the natural channel of the creek changed by nature and remained by such change to be the natural channel of the creek for seventeen years, it lost its right to discharge the water in the place where it had always done so by reason of the fact that in doing so it could not restore the water from the creek to its natural channel as formed by the freshet without running acros the plaintiff's land to his damage. The reason for such holding is, that a landowner is entitled to change the course of a natural stream within the limits of his own land, where he does not by so doing cast on the land of an adjoining proprietor water which would not naturally flow there but restores the same to its natural channel before it reaches the land of the adjoining proprietor. [See 40 Cyc. 608.]

The rule is stated in the well considered case of Stein v. Burden, 29 Ala. 127, 65 Amer. Decs. 394, l. c. 400, where the court used the following language:

"The argument, then, that a party who diverts water, and provides the means for its return, may then rest—that he may then continue to abstract large quantities of water, which water is not in fact restored to its accustomed channel, cannot be supported. It is no answer that the water would have continued to flow

back into the stream had not a stranger by his unauthorized interference rendered the means provided to accomplish the object. He abstracts the water at his peril. His right to do so is not an absolute, but a qualified, right. It only becomes a right when by restoration it ceases to work an injury to another. The diversion is prima facie a nuisance; and each continuance places the party under obligations to abate it. It is no defense, in such case, that the author of the act was willing to apply the corrective, but was prevented. This rule, under the circumstances, is not a severe one. It only enjoins that the assumed right to abstract shall be abandoned whenever the water cannot be returned. The argument against these views rests on the fallacy which places the diversion of water among the absolute rights of parties. It is contingent; made absolute only so long as the diverted water flows back.''

To the same effect is the holding in the case of Smith v. Musgrave, 32 Mo. App. 241.

The place where the defendant now seeks to discharge this water is no longer the natural channel of the creek into which the water would flow were it not diverted at its source, the spring, and it has not been the natural channel since 1898. The defendant, therefore, is not complying with the condition which gives him the right to divert this water, that is, to restore it to its natural channel without damage to plaintiff's land. We, therefore, hold that the action of the defendant in casting this water on plaintiff's land is wrongful.

There is some complaint made by appellant concerning the action of the trial court in permitting damages to be assessed by a jury trial. The Supreme Court, in its opinion heretofore mentioned in transferring the case back to our court, calls attention to the fact that the plaintiff is not objecting to the form of the judgment, and is therefore willing to accept a money damage rather than to insist upon the injunctive relief asked for in the bill; and the Supreme Court held

that in view of the fact that where the judgment ren-
dered can be settled by the payment of money, no ap-
peal will lie to that court where the amount involved
does not exceed $7500. On a reading of the record, we
find there was evidence taken of the value of the dam-
age to plaintiff's property, and from the record we
cannot say that the sum allowed by the jury, and ap-
proved by the trial court, is so much in excess of the
damages shown that the judgment should be set aside.

There are other questions raised on this appeal
which we have considered and hold are not of sufficient
weight to set aside the judgment. The principal ques-
tion to be decided is, whether the plaintiff's rights
were being invaded by the action of the defendant in
discharging the water into the old bed of the creek
after a new channel had been cut and had remained
the natural and main channel of the creek for seven-
teen years, which change, made by nature, rendered
it impossible for the defendant to divert the water with-
out damaging plaintiff's land in restoring it to the new
and natural channel. We hold on this point as before
shown, that with the right of diverting water from a
stream goes the burden of restoring it to the stream
without damage to a lower owner; and that where na-
ture has so changed the stream as to prevent such a
restoration, the right to divert ceases. The trial judg-
ment provides that on the payment of the sum named
the defendant will be given a perpetual right to dis-
charge the water on plaintiff's land. By the acceptance
of that judgment and the money so paid by the defend-
ant, the land would necessarily be burdened with the
servitude created by such judgment.

The judgment is affirmed. *Sturgis, P. J.,* and
*Bradley, J.,* concur.